HORATIO N. WALTON, Administrator, etc., Appellant, v.
SARAH J. WALTON, Executrix, etc., Respondent.

The administrator is entitled to the possession of the assets of the intestate, and
 may maintain an action for their recovery. .He is the owner in trust for the
 purpose of administration.

In an action against an executor to recover such assets as come into the hands
 of his testator, and remained in his hands at the time of his death, it is unneces-
 sary to allege in the complaint that such assets ever came into the hands
 of the executor. It is sufficient that they came into the hands of his testator,
 and were unadministered at the time of his death.

Even where it is shown that the assets have come into the hands of the execu-
 trix, it is proper that the action to recover the same, should be brought against
 her in her representative capacity.

HOGEBOOM, J.   If this case turns upon the allegations in the
complaint, independent of those contained in the annexed
schedule, I have no doubt that the action is well brought,
and I do not see that they are so far varied by the contents of
the schedule, that they should alter the result at which we
should otherwise arrive.   Those allegations are explicit, that
William B. Walton had at his death, in his hands, a large por-
tion of the assets of Jonathan Walton unadministered, that
the plaintiff has been duly appointed administrator of such
unadministered assets, and the defendant has been duly
appointed and qualified as executrix of the last will and testa-
ment of William B. Walton deceased, and refuses to account
for such unadministered assets.

*Prima fâcie* and unexplained, I do not see why this does
not make out a perfect cause of action in favor of the plaintiff
against the defendant.   As there is no averment in the com-
plaint independent of the schedule that these assets have been
collected, nor in either the complaint or the schedule that the
debts and expenses of administration of the estate of Jonathan
Walton have been defrayed, there is nothing to show but that
these assets are absolutely needed for such purpose, and they
can only be properly applied to that object by the duly
appointed legal representative of the estate of Jonathan Wal-
ton deceased.   Independent of this, and for all legal pur-

poses, the plaintiff is the sole legal representative and possessor of the unadministered assets of said deceased, and is entitled by law to the custody of the property and the possession of the assets for the purpose of administration.

He may bring suits to recover the property against any person in possession of it, trover or replevin, if it exist in specie in the condition it was at Jonathan Walton's death, or assumpsit or other appropriate action if it has been converted into money.

It may well be presumed from the allegations in the complaint, that the unadministered assets are in their original condition, that is, in the shape they were at the death of Jonathan Walton. If so, there does not seem to me a possible doubt that the plaintiff is entitled to them from any and every person in whose possession they may be. They belong to the plaintiff as owner, owner in trust it is true, for the purpose of administration, but nevertheless owner in fact. They are unadministered assets, they require administration, and no person in the world can perform this office upon them except the plaintiff.

Indeed, if they have been rightfully or wrongfully converted into money, they are nevertheless unadministered assets of Jonathan Walton deceased, so charged to be in the complaint, and so admitted to be by the demurrer, and therefore rightfully belonging to the plaintiff, and the plaintiff alone. Even if they have been rightfully converted into money by the executional act of William B. Walton, this is but a partial administration of them, they have not been fully administered, we are bound to assume that they require further administration, for they are charged and admitted to be unadministered assets, and in the face of such an admission, we are not permitted to say, that they acquire no further act of administration. They may be absolutely indispensable to pay debts of Jonathan Walton deceased, and no one can employ them legitimately for such a purpose except the plaintiff. Whenever, therefore they are found, in whomsoever's possession they may be, such person is bound to deliver them over into the possession of the plaintiff.

Regarding this right of the plaintiff, therefore, as absolute and undeniable, it seems to follow as a necessary consequence, as has just been stated, that every person in whose possession they may be, is bound to deliver them up, or account therefor, and therefore that the defendant is in no legal condition successfully to resist a demand of the same. But conceding the plaintiff's right to the possession of unadministered assets, it is argued that the action is not well brought against the defendant for three reasons :

1. Because William B. Walton was, before his death, rightfully in possession of them, rightfully converted them into money, if he did so convert them, and rightfully retained them for the purpose of paying debts, and legacies, and distributive shares of Jonathan Walton's estate. 2. Because there is no allegation in the complaint that these assets in whatever shape they may be, ever came into the personal possession, custody, or control of the defendant. 3. Because if they are in the defendant's possession, the action should be against her personally, and not as representative of the estate of William B. Walton deceased.

1. It may and must be conceded that William B. Walton, as executor of Jonathan Walton, had a right to the possession of the assets ; a right to convert them into money, and a right, up to the period of his death, to appropriate them to all legitimate purposes of administration of the estate. But this latter office he had not performed, and if he had converted a portion of the assets into money he had only partially administered these assets, and assets are unadministered in the sense of the law until the whole work of administration upon them is consummated. Administration of assets implies such a complete disposition of them as not only to collect them from the debtor of the estate—if they are in that condition—but, finally, to place them in the hands of the creditor, legatee, or distributee to whom, after undergoing the process of administration, they finally belong. As before stated, they had not undergone this latter process ; and we are obliged, in the state of facts in which the parties have presented the case to us, to assume that the assets required

3

further administration. While, therefore, it might safely be conceded that William B. Walton might rightfully retain the assets in his hands, even up to the period of his death, for the purpose of paying debts, legacies, and distributive shares, that right ceased at his death. It did not devolve upon his executor, but upon his successor in the trust; it did not go to the defendant, but to the plaintiff. The plaintiff, and not the defendant, succeeded him in the administration of the estate of Jonathan Walton.

The state of the assets at the death of William B. Walton, as developed in the schedule annexed to the plaintiff's complaint, is properly classified in the defendant's points, under three several heads.

1. Moneys received by William B. Walton as executor of Jonathan Walton, deceased, in payment of bonds, notes, and other demands belonging to the said Jonathan Walton at the time of his death.

As to these I have already expressed the opinion that they were only partially administered; that they were still, in the eye of the law, considered, in connection with the admitted allegations in the complaint, unadministered assets; and that in the latter character they necessarily passed, or rightfully would pass, into the legal custody and control of the plaintiff.

2. Two bonds and a note, executed by the said William B. Walton to the said Jonathan Walton in his lifetime, or the amount thereof. It does not expressly appear whether these had or had not been converted into money. If they had not, the plaintiff was clearly entitled to the securities themselves as a portion of the unadministered assets of Jonathan Walton. If they had been converted into money, then they are placed in the same category with the other partially administered assets above referred to of the same estate.

3. Real estate bid in by William B. Walton, as executor of Jonathan Walton, deceased, on a foreclosure by William B. Walton as such executor of a mortgage executed on said real estate to Jonathan Walton. Said real estate, subsequent to such bid, being occupied by William B. Walton at the

time of his death, and by the defendant, as his executrix, subsequently and being still occupied by the latter. This purchase was necessarily in judgment of law, as it appears to have been, according to the instruction of the purchasee, a purchase for the benefit of the estate of Jonathan Walton. Such estate, or its legal representative, would have a right to elect to take the benefit of such purchase or to hold the purchaser responsible for the value of the property or the amount of the investment. Such election has not been made. And the plaintiff, through the instrumentality of the court, has a right to hold the estate of William B. Walton accountable in some one or other of these modes for this property, and to require an account thereof. He may require an account of the moneys due on the mortgage, a delivery of the mortgage securities, an account of the rents and profits, and of the value of the estate.

Whether, therefore, we regard the assets in their unadministered form as charged in the body of the complaint, or in their partially administered condition as set forth in the schedule appended to the complaint, there seems to be abundant aliment for such account as is demanded by the complaint in this action.

2. It is objected that there is no allegation in the complaint that these assets ever came into the possession of the defendant. It is not necessary there should be. It is sufficient that they were in the hands of William B. Walton unadministered at the time of his death. That makes his estate liable to account for the same. The defendant is the representative of that estate, and as such the proper party to answer such a charge.

But I think the legal presumption without an express allegation is, that the property in possession of William B. Walton at the time of his death, passed into the hands of his executrix, and that, if in fact, it be otherwise, it lies with her to rebut that legal presumption by an express allegation to that effect in the answer to the complaint.

Further than this it expressly appears by the schedule annexed to the complaint that she is in possession as his

executrix of the real estate bid in on the mortgage fore-closure, and there is, therefore, a portion of the property for which she is liable to account.

3. It is further objected that the plaintiff's remedy, if available against the defendant at all, is so, only against her personally, and not as executrix of the will of William B. Walton, deceased. This is not an effectual answer to the whole complaint, for two reasons, 1. Because as to such property as was in the hands of William B. Walton unad-ministered at the time of his death, his estate, and conse-quently the defendant as executrix is liable for it. If, therefore, the defendant did not come into possession of the property, the estate, and consequently herself as its represen-tative, is responsible for it, as being in the possession of Wil-liam B. Walton at the time of his death. If it did pass into her possession as executrix, there is an increased propriety that as such executrix she should be accountable for it.

This is sufficient to show that as to some portion of these assets she is properly prosecuted as executrix. Whether as to other portions of them, for example, goods and chattels, bonds and securities, which are in her hands, in specie in the same condition in which they were at the death of Jonathan Walton (if there be any such), she may not be liable for them individually, it is not necessary to determine. I think, how-ever, she would be also liable for them in her representative capacity — for she received them as such — she holds them as such — she claims them as such. As to the real estate, the charge in the complaint is that she is in possession of it as executrix of William B. Walton, deceased, and so far it seems to be manifestly proper to hold her to account in her representative character.

I therefore regard the action as properly instituted, and the complaint as showing a good cause of action. I think the judgments of the Special and General Term of the Supreme Court should both be reversed with costs, and judgment should be given for the plaintiff on the demurrer with leave to the defendant to withdraw the same, and answer on payment of costs.

All for reversal except SELDEN, J., who reads for affirmance. DENIO, Ch. J., is for reversal on the ground that defendant, as executor of his father, is indebted to plaintiff for bonds and mortgages collected. Doubts whether he would concur as to property remaining in specie, or for real estate bid off by him.

JOEL TIFFANY, *State Reporter.*